IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINA L.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

Civ. No. 3:18-cv-2212-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On November 13, 2015, Plaintiff filed an application for benefits, alleging disability as of December 31, 2011. Tr. 15.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act as of August 15, 2015, the amended onset date. Tr. 15-31. Plaintiff argues the ALJ erred in finding her less-than fully credible, in weighing certain medical opinions, and in rejecting opinion testimony from a therapist. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: neurocognitive disorder, status post cerebrovascular accident (CVA), and obesity. Tr. 17. The ALJ concluded Plaintiff had the RFC to perform light work with the following relevant limitations: that she is limited to no more than frequent kneeling, crouching, stooping or climbing of ramps and stairs; and that she is limited to simple, repetitive, routine tasks. Tr. 20. Plaintiff argues the ALJ did not capture the full extent of her limitations. The Court disagrees.

1. **The ALJ's Credibility Determination**

This case turns largely on Plaintiff's credibility regarding the extent of her limitations. Everyone agrees that Plaintiff sustained a stroke in August of 2015. Plaintiff alleged severe limitations following the stroke, limitations she alleges continued through the date of the hearing in January 2018. At the hearing, the ALJ asked Plaintiff why she could not work. Plaintiff responded, "I had a stroke; and since the stroke, I've had trouble balancing." Tr. 45. "I have trouble getting around. My mobility is hindered. I crash into objects. My balance is still off. So, like, my home is equipped with padding so I don't get injured. I have a special railing. I require the assistance of a rollator to keep me from tumbling over when I'm out of the home." Tr. 45. She also alleged she loses her train of thought and is unable to read anymore due to a decrease in comprehension skills. Tr. 46. "And now I do have some idea that I'm at home, but I feel like I'm in a dream, that I don't know if I'm awake or if I'm asleep most of the time. But I do function, like, I do get up, get dressed, watch TV, play with my pets, normal things." Tr. 46.

Plaintiff testified she depended heavily on her mother and would not leave the house without her. Tr. 49. Plaintiff relied on her mother to fill out all of her paperwork. Tr. 51-52. As

for her daily activities, Plaintiff stated she sleeps most of the day. Tr. 49. "I watch television, but I'm not really paying attention. I'm just killing time." Tr. 53.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ pointed to several of the above factors in finding Plaintiff less-than fully credible as to the extent of her limitations:

> There are significant inconsistencies between the claimant's allegations of physical and mental conditions preventing her from working and the minimal objective findings. The record shows the claimant sustained a CVA in August 2015, and although the stroke was described as mild, she appears to have incurred significant functional deficits. Yet, the record also shows her functional difficulties improved and although she does have some ongoing physical and mental symptoms of a mild gait imbalance and mild cognitive problems, they are not to the degree alleged. Additionally, the record shows [that] although she continues to present with mild gait imbalance, [] there is no support for the need of an assistive device.

Tr. 21.

The ALJ then presented a thorough summary of the medical records detailing Plaintiff's condition in the months following the stroke. Tr. 21-22. The ALJ noted that while in the hospital:

> She also underwent a speech pathology consult per stroke protocol. It was felt she had a possible cognitive-linguistic impairment characterized by deficits in higher

level areas of attention/concentration and short term memory. She also reported
difficulty with word retrieval and attending to conversation. However, her verbal
fluency, problem solving, and awareness and insight were all intact. Her physical
exam on discharge four days later revealed her cortical function was intact, her
language was intact and she had no dysarthria.

Tr. 21.

Days later, Plaintiff returned to the hospital. At that time, the ALJ noted Plaintiff's chief concern was headaches. Although Plaintiff complained of constant headaches, medical records demonstrated "she had no focal neurologic deficits, no difficulty with balance or ambulation. She also had normal speech. CT scans did not reveal any concerning findings." Tr. 21. The ALJ noted that just over one month after the stroke, "it was noted the claimant had no deficits from her stroke. She had no gait problem and good balance. Her coordination was intact and she denied dizziness. She felt she was having some word finding difficulty at times. Yet, she was noted to be interactive and very talkative and she was felt to have normal concentration." Tr. 22.

These findings are supported by the record. Emergency room records from September 2015 notes that although plaintiff suffered dizziness and imbalance when she first presented following the stroke, "These [symptoms] have since improved tremendously." Tr. 350. Although Plaintiff complained of constant headaches, "Pt has not followed up with her neurologist for these headaches." Tr. 350. She had normal speech and memory, normal finger to nose, and Plaintiff "states she is feeling improved. Her headache and neck pain are not completely resolved, but she feels better. She remains very well appearing and has no focal neuro deficits." Tr. 352.

One month later, Plaintiff "underwent a speech therapy evaluation. Testing revealed moderate to severe deficits in memory, attention and executive functioning." Tr. 22. Despite these deficits, rehabilitation notes state Plaintiff "understands and follows directions" and understood the treatment plan. Tr. 543. One month later, although Plaintiff complained of some

5 – OPINION AND ORDER

imbalance and distorted speech, "it was felt she was overall improving." Tr. 22. Neurological rehabilitation notes from this time period indicate that "Pt thinks her brain is starting to work better. She was able to solve a problem this last she doesn't think she could have done a couple of months ago." Tr. 530.

In December 2015, Plaintiff reported feeling drunk and complained of running into walls. Her doctor noted Plaintiff "has continued to bump into objects in home, but when she is in public, has been able to walk quite well." Tr. 473. Contemporaneous rehabilitation notes state, "Overall she does have some mild balance issues but nothing concerning for fall risk at this time. Her primary concerns right now are neck/head/facial pain." Tr. 543.

In January 2016, at an occupational therapy evaluation, Plaintiff complained of word finding issues, memory issues, and headaches. Tr. 524. The ALJ noted that in early 2016, testing revealed Plaintiff "performed in the low average range on immediate memory, and borderline on delayed memory. She also demonstrated deficits or reduced performance on language and attention domains. Speed of processing was observed to be slow and executive functioning was observed to be impaired." Tr. 22. The ALJ noted:

> In March 2016, she reported having memory loss and dizziness and vertigo constantly, but she was not falling. However, on exam, she had normal muscle tone and her coordination was normal. In late March 2016, she had minimal difficulty with word retrieval and she was able to provide somewhat vague descriptors or synonyms with increased time. She had good focus during her therapy session and no redirection was required. Also in late March 2016, the claimant's neurological rehabilitation therapist indicated the claimant was doing extremely well meeting and/or surpassing most of her physical therapy goals and she was ready for discharge.

Tr. 22 (internal citations omitted).

Neurology notes from this time period indicate Plaintiff's condition appeared to be improving. Plaintiff reported "significant improvement in her headaches" after increasing

medication.[3] Tr. 606. "Pt finally got into [Occupational Therapy and Speech Therapy]. It is helping. Pt hasn't been walking much due to weather and she is getting to the gym about once a week." Tr. 596. "Pt is doing extremely well meeting and/or surpassing most of her PT goals. She is ready for [discharge]." Tr. 598.

In March 2016, Plaintiff's chief complaints to her primary care physician were myalgia in her extremities, dizziness, and heartburn. Tr. 675. The ALJ noted that in April 2016, Plaintiff felt her cognitive impairments had slightly improved. Tr. 22. The ALJ pointed out that an examination at this time indicated Plaintiff's "gait and station were unremarkable with no obvious unsteadiness, or signs of imbalance." Tr. 22.

The ALJ noted Plaintiff next presented to neurology in August 2016. The neurologist reported plaintiff complained of headaches, "shooting pain starts from her neck into the center of her head and to her bilateral eyes . . . throbbing pain bilateral at the top half of head[.]" Tr. 1105. "She reports doing well up until about 2 weeks ago when she was moving. The increased activity caused increased pain typical of her old headaches." Tr. 1105. Notes from this visit indicate that other than Plaintiff's complaints of headaches, the examination produced normal results. Mental status: Normal concentration/attention span, appropriate appearance, "able to perform a three step command." Tr. 1108. "Fluent and articulate without evidence of aphasia or dysarthria." Testing of motor system revealed "Normal tone in all groups. No drift." Sensation testing revealed "Light touch: intact and symmetric in the bilateral upper and lower extremities." Plaintiff's coordination revealed "Finger to nose is of normal speed, no action tremor, and no end-point dysmetria[.] Heel to shin is without any ataxia[.]". Gait testing revealed normal heel and toe walking, normal tandem gait, normal casual gait. Tr. 1109. The neurologist noted, "We

---

[3] At the hearing, Plaintiff confirmed medication was effective in controlling her headaches.

7 – OPINION AND ORDER

discussed that because she had been headache free up until this recent flair, we would not make any significant changes to her medications."

After summarizing the relatively normal results from the above visit to Plaintiff's neurologist, the ALJ summarized Plaintiff's five follow up visits—from August 2016 to December 2016—with her primary care physician. In August, Plaintiff's physician noted, "She is alert and oriented to person, place, and time. She has normal strength. No cranial nerve deficit or sensory deficit. She displays a negative Romberg sign. Coordination normal." Tr. 1008. Although Plaintiff's speech was delayed, the doctor noted, "Impaired: while having a [headache] otherwise fine." Tr. 1008.

The ALJ noted that at her next visit, "she reported her headache was slowly improving. However, she was using a four wheeled walker now due to balance concerns. Yet, on exam, she had normal range of motion, normal muscle tone and normal coordination." Tr. 23. In October and again in November, the physician noted, "She has normal reflexes. She exhibits normal muscle tone. Coordination normal." Tr. 96. Finally, in December, they doctor observed, "Coordination (mild gait imbalance, no sig strength deficits.) normal." Tr. 993. The ALJ pointed out that Plaintiff next sought treatment eight months later, in August 2017. Tr. 23.

After a thorough summary of Plaintiff's condition, the ALJ concluded, "While the claimant's impairments could reasonably be expected to cause some restriction in her functional capabilities, the medical record clearly shows these impairments are not nearly as debilitating as she has alleged and are no more limiting tha[n] set forth in the residual functional capacity." Tr. 23. This conclusion must be viewed in light of the extreme limitations Plaintiff testified to at the hearing. Plaintiff testified that her balance was so poor, her home needed padding so she would not get injured when falling or bumping into walls. Tr. 45. Plaintiff testified she could not leave

her home with out a walker to keep her from falling. Tr. 45 ("I require the assistance of a rollator to keep me from tumbling over when I'm out of the home."). The ALJ contrasted Plaintiff's testimony with numerous medical records over the time period at issue demonstrating that although Plaintiff complained of balance issues, the treatment notes largely indicated Plaintiff's coordination was only mildly impaired. The ALJ pointed to additional inconsistencies:

> The claimant currently alleges having significantly limited activities of daily living. Even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this decision. It appears the limited range of daily activities is a lifestyle choice and not due to any established impairment. Additionally, the claimant's statements regarding her dependence on her mother for activities of daily living and her inability to go places without her is questionable considering she advised her therapist in October 2017, that it is actually her mother that was dependent on her, and she would not go anywhere without her. She also reported she wanted to move away from her mother, but she did not have the finances to do so and she did not want to part from her seven cats and one bird, which made finding a new place difficult. Of note, she was living with her mother for several years prior to her CVA. These factors suggest the claimant has attempted to portray limitations tha[t] are not actually present in order to increase the chance of obtaining benefits.

Tr. 23 (internal citations omitted).

These specific and legitimate reasons are supported by substantial evidence in the record. Plaintiff testified that her limitations make her reliant almost entirely on her mother. She testified that the only time she leaves her home is when she goes grocery shopping with her mother. Tr. 49-50. Plaintiff testified that "now my mom fills out all my paperwork for me." Tr. 52. However, as noted by the ALJ, the record contains the following note from Plaintiff's October 2017 therapy session: "*Christina stated that her mother is so dependent on her* that she will not go anywhere without her." Tr. 1080 (emphasis added). That same month, Plaintiff's therapist noted Plaintiff was disappointed after getting denied public housing assistance and learning "she might have to continue to live with her mother." Tr. 1080. One month later, the therapist discussed

transitional housing options for Plaintiff to live apart from her mother but Plaintiff "reports not wanting to part with her 7 cats and 1 bird, which will make any placement difficult." Tr. 1089. The ALJ reasonably determined that Plaintiff overstated the extent her impairments made her dependent on her mother.

Finally, the ALJ concluded:

> The record also reflects that the claimant has made other inconsistent statements regarding matters relevant to the issue of disability. For example, the claimant has provided conflicting information regarding when the disability began. She initially alleged an onset date of disability of December 31, 2011. However, the record shows the claimant stopped working to go [to] beauty school, not her alleged impairments and she reported she was feeling well prior to her CVA.

Tr. 24.

These findings are supported by substantial evidence in the record. The record demonstrates Plaintiff worked successfully at several jobs before quitting work not due to any impairment, but to attend cosmetology school. An ALJ may point to the fact that a claimant left work for reasons unrelated to impairments in finding a claimant not credible. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001).

Additionally, this Court has previously held that an ALJ may point to the fact that a claimant worked during a time she alleged being disabled in finding the claimant not fully credible as to the extent of her limitations. *See Gartzke v. Colvin*, 129 F.Supp.3d 1040, 1050 n.7 (D. Or. 2015) (noting "The ALJ, and this court, must rely on Gartzke's own allegations in evaluating her claim. That she claimed becoming disabled in 1999 despite working for two full years after that date is a clear and convincing reason for finding Gartzke not credible as to her limitations."). In *Gartzke*, this Court concluded:

> Especially in cases involving mental impairments, ALJs and courts must look to a claimant's own statements as to both their limitations, and the evolution of those limitations. . . . When a claimant alleges an onset date of 1999, yet maintains substantial gainful activities for over two years after that date, the ALJ may point

10 – OPINION AND ORDER

> to that discrepancy in finding a claimant not fully credible as to the extent of her limitations. Here, the ALJ did just that, noting that Gartzke continued to work after the alleged onset date."

*Id.* at 1049-50.

Here, the ALJ noted that Plaintiff provided "conflicting information regarding when the disability began." Tr. 24. In fact, for several years after her initial alleged onset date, Plaintiff attended school full-time to become a hairdresser. Tr. 44, 541. That Plaintiff attended three years of beauty school during a time period she alleged being disabled is a clear and convincing reason supporting the ALJ's determination that Plaintiff was less-than fully credible as to the extent of her limitations.

To summarize, the ALJ did not err in utilizing "ordinary techniques of credibility evaluation" in weighing the validity of Plaintiff's self-reported limitations. *Ghanim*, 763 F.3d at 1163; *Lingenfelter*, 504 F.3d at 1040. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))). Because the ALJ provided "specific, clear and convincing reasons" for finding Plaintiff less-than credible regarding the extent of her limitations, the ALJ did not err in giving little weight to Plaintiff's testimony regarding those limitations. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273,1282 (9th Cir. 1996)).

2. **The ALJ's Weighing of the Medical Opinions**

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

11 – OPINION AND ORDER

may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. . . ." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). One such specific and legitimate reason to reject a treating doctor's opinion is if there is an incongruity between it and his medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's opinion, which in turn is entitled to more weight than a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Plaintiff first argues the ALJ erred in rejecting the opinion of David Gostenll, PhD. Dr. Gostnell is a Clinical Psychologist and Neuropsychologist. Tr. 713. On April 21, 2016, Dr. Gostnell performed a neuropsychological screening exam on Plaintiff. The ALJ dedicated nearly an entire page in summarizing and discussing Dr. Gosnell's opinion. The ALJ noted testing revealed Plaintiff had borderline general intellectual functioning and mild to moderate global memory impairment. Tr. 26. The ALJ noted Dr. Gosnell diagnosed Plaintiff with "mild neurocognitive disorder due to cerebellar stroke" and her "impaired memory, concentration and psychomotor speed constitute significant barriers to her employment[.]" Tr. 26. Finally, the ALJ noted Dr. Gosnell's opinion that Plaintiff "cannot be considered medically stationary at this time, given that at approximately 8 months post-CVA, further neurological recovery can be anticipated." Tr. 718. Contrary to Plaintiff's assertion, the ALJ did not reject Dr. Gostenll's opinion. Instead, the ALJ concluded:

> Dr. Gostnell's opinions are given some weight. He appears to base at least a portion of his findings regarding her inability [to] work on the claimant's subjective complaints. However, as noted above there are significant inconsistencies in much of what she has reported in different parts of the record. For instance, he seems to have accepted her report of dependence on her mother for her activities of daily living, even though she later reported her mother was dependent on her. *Nonetheless, the limitation to performance of only simple,*

> *routing and repetitive tasks accounts for the findings of cognitive difficulties described by Dr. Gostnell based on his testing of the claimant.*

Tr. 26 (emphasis added).

When weighing a medical opinion, the ALJ must consider that opinion in relation to the record as a whole. 20 C.F.R. § 404.1527(c)(4). As outlined above, the ALJ provided clear and convincing reasons for finding Plaintiff was less-than fully credible as to the extent of her limitations. The ALJ's conclusion that Dr. Gostnell accepted Plaintiff's description of dependence on her mother is supported by the record. Tr. 715 (Dr. Gostnell's notes that Plaintiff's mother drove Plaintiff to the exam, prepares all of Plaintiff's meals, and that Plaintiff used to shop for her mother but can no longer do so).

Additionally, the ALJ noted that Dr. Gostnell believed Plaintiff's condition could be expected to improve as the examination was only eight months removed from the stroke. As described above, the ALJ provided a thorough discussion of Plaintiff's medical records in the months following Dr. Gostnell's examination. The ALJ also assessed Plaintiff's cognitive abilities based on the record-as-a-whole:

> In understanding, remembering, or applying information, the claimant has a moderate limitation. She alleges being forgetful and testing has shown she has difficulties with memory. However, she is able to follow directions and complete simple tasks. She also was able to provide details regarding her medical history with[out] any apparent difficulty at the hearing. In interacting with others, the claimant has a mild limitation. She is described as pleasant, polite, and cooperative. Her therapist noted she is engaged and responds interactively and appropriately to questions. With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. She has some aphasia issues, but she can generally maintain conversational exchanges. Testing also showed she had low average speed regarding her visuomotor functioning, and severely impaired alternating attention. However, she was able to concentrate throughout the consultative evaluation testing without fatigue and respond accurately to simple and some detailed instructions. She also was able to follow testing instructions and complete all testing in a single session.

Tr. 19.

13 – OPINION AND ORDER

The ALJ's conclusion that, based on the entire record, limiting Plaintiff "to simple, repetitive, routine tasks" accurately reflected Dr. Gostnell's opinion is free of legal error and based on substantial evidence in the record. This conclusion is also consistent with Dr. Gostnell's observation that "During the formal testing, she was attentive, persistent, and appeared to be well motivated, giving full effort to each task, with the exception of occasional impulsive responding." Tr. 716.

The limit to simple, repetitive, routine tasks—along with Dr. Gostnell's opinion that Plaintiff could be expected to improve—is supported by treatment notes in the months following Dr. Gostnell's exam. For example, in August 2016, Plaintiff's neurologist described Plaintiff's mental status in the following notes: Normal concentration/attention span, appropriate appearance, "able to perform a three step command." Tr. 1108. "Fluent and articulate without evidence of aphasia or dysarthria." Tr. 1109. Notes from Plaintiff's therapist one year later also support the finding that Plaintiff, though impaired, could perform simple, repetitive, and routine tasks. Tr. 1091 ("She continues to be engaged in sessions and appears to be gaining insight into her symptoms. She also appears to be using her coping skills on a regular basis."); Tr. 1052 ("Christina appeared engaged through out interview, offering relevant feedback when prompted.").

Plaintiff also argues the ALJ erred in rejecting the opinion of Stuart Currie, MD, Plaintiff's treating physician. Dr. Currie first treated Plaintiff in October 2017. That month, Dr. Currie filled out a form for Plaintiff's application to discharge her student loans due to permanent disability. Tr. 1113-1114. In January 2018, Dr. Currie filled out a Physical Capacity Statement. Tr. 1125-1129. In addressing the weight given to these opinions, the ALJ stated:

> Dr. Currie's opinions are given no weight for multiple reasons. First, while the doctor does have a treating relationship with the claimant, the treatment history is

quite brief. Based on the medical record, it appears although the claimant treated at his practice, he only saw the claimant for the first time in October 2017. Second, he also appears to have relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported despite the existence of reasons for questioning the reliability of the claimant's subjective complaints. Third his findings are completely inconsistent with the minimal objective findings on exam of the claimant that reveal only mild cognitive problems and mild gait imbalance and he does not explain this weakness. For instance, there is no support in the medical record that the claimant cannot walk without assistance and he provides no explanation for his opinion that she does. Additionally, the record does not support his statement the claimant has significant aphasia issues and she did not present at the hearing with any substantial aphasia issues. Instead, she was able to maintain a conversational exchange without any apparent difficulty. Fourth, his opinions are contradictory in that in October 2017, he opined no improvement was expected in her functioning and therefore she should be eligible for loan forgiveness. At that time he indicated she could not lift. Yet, in January 2018, he felt she could lift up to 50 pounds and he did not explain why his opinion changed.

Tr. 28.

All of the above reasons are specific and legitimate reasons for giving Dr. Currie's opinions no weight. Turning to one of those reasons, "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (internal quotations omitted). The ALJ reasonably concluded Dr. Currie—who opined Plaintiff could walk only with the assistance of a walker—based his opinion largely on Plaintiff's self-reports. As detailed above, the record supports the ALJ's determination that Plaintiff suffered only mild balance and coordination impairments. Additionally, Dr. Currie's comment on the loan discharge application that Plaintiff "cannot cook or clean. Needs help getting dressed sometimes" clearly comes from Plaintiff's own reports. Tr. 1114.

The ALJ reasonably pointed to inconsistencies in the two forms Dr. Currie filled out. In October 2017, Dr. Currie stated Plaintiff had severe limitations in how much she could lift. Tr. 1114. Dr. Currie restricted Plaintiff to "no lifting," Tr. 1114; and opined that Plaintiff's condition

15 – OPINION AND ORDER

was stable and no further improvements were expected with respect to her condition. However, just three months later, Dr. Currie opined Plaintiff could lift 10 pounds continuously, 20 pounds frequently, and 50 pounds occasionally. Tr. 1127. This unexplained "incongruity" is a specific and legitimate reason for rejecting Dr. Currie's opinion. *Tommasetti*, 533 F.3d at 1041.

Finally, Plaintiff argues the ALJ erred in giving no weight to the opinion of Misty Stronk, MSW. The parties agree Ms. Stronk's opinion is that of an "other source." 20 C.F.R. § 404.1513(d). The ALJ may reject "other source" opinions if the ALJ provides germane reasons for doing so. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Ms. Stronk opined Plaintiff had marked restrictions in her ability to respond to demands and adapt to changes, Tr. 1123, marked restrictions in her ability to understand, remember, and carry out detailed (3 or more step) instructions, Tr. 1121, and marked restrictions in her ability to ask simple questions or request assistance from supervisors, Tr. 1122.

The ALJ noted that Ms. Stronk based her statements on Plaintiff's self-reports, which she appeared to uncritically accept as true. Tr. 27. This finding is supported by substantial evidence in the record. The first thing Ms. Stronk wrote when asked to explain her restrictions was "Per clients report[.]" Tr. 1121-22. Additionally, the ALJ pointed out that Ms. Stronk's findings were inconsistent with her treatment notes, which dealt largely with Plaintiff's relationship with her mother. These are germane reasons for giving Ms. Stronk's opinion no weight.[4]

Instead, the ALJ gave great weight to the State Agency physicians, finding that they were more consistent with the medical record. In describing those opinions—opinions that conflicted with Dr. Currie's and Ms. Stronk's opinions—the ALJ noted those doctors felt

---

[4] The Court notes Ms. Stronk's assessment contains internal inconsistencies. For example, Ms. Stronk felt Plaintiff would have extreme limitations in her ability to understand and carry out short and simple instructions, but only marked restrictions in her ability to understand and carry out detailed instructions. Tr. 1121. Additionally, Ms. Strong felt she was "unable to assess" Plaintiff's ability to concentrate, persist, or maintain pace. Tr. 1122.

Plaintiff were capable of performing light work. Additionally, the ALJ pointed out the reviewing physicians:

> noted the claimant's multiple allegations were not supported by the objective findings in the record. Their opinions are given great weight. They are consistent with the medial evidence discussed throughout this decision that shows the claimant does have some residual functional limitations due to her CVA and due to her obesity, but no more than set forth in her residual functional capacity.

Tr. 28.

The ALJ also gave great weight to the opinions of the State Agency psychological consultants, who felt that although Plaintiff could not understand and carry out complex instructions, she was capable of understanding simple instructions and maintain concentration and pace for simple step tasks for two-hour work periods. Tr. 28-29. The ALJ concluded these opinions "are consistent with the record of evidence showing the claimant has some mild residual cognitive issues, but none that would preclude her from performing simple, repetitive, routine tasks." Tr. 29.

Here, the ALJ reasonably weighed the conflicting medical opinions and gave greater weight to the State Agency doctors. In the ALJ's view, those opinions were more consistent with the record-as-a-whole. The ALJ backed up this conclusion with a detailed summary of Plaintiff's medical records. Although Plaintiff argues another interpretation of the record is reasonable—i.e., that certain medical and other source opinions demonstrate she is disabled— that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))).

/ / / /

/ / / /

17 – OPINION AND ORDER

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 9th day of March, 2020.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge